1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                    FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   CHRISTOPHER JAGERSON,                    No.  2:12-cv-1524 GEB AC P

11              Petitioner,

12        v.                                  FINDINGS AND RECOMMENDATIONS

13   MATTHEW CATE, et al.,

14              Respondents.

15

16              Petitioner is a state prisoner proceeding pro se and in forma pauperis on a petition

17   for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  Petitioner alleges that his gang

18   validation by prison officials violated his rights under the Sixth and Fourteenth Amendments.

19   Respondent has moved to dismiss the petition, arguing that this court lacks habeas jurisdiction

20   because petitioner's validation is not dispositive of the fact or duration of his confinement.

21   Petitioner has opposed the motion, and additionally moved for counsel.  For the reasons outlined

22   below, the undersigned recommends that the Court grant respondent's motion to dismiss, and

23   deny petitioner's motion for counsel.

24              **BACKGROUND**

25              Petitioner is a California state prisoner serving a sentence of 25 year to life, with

26   the possibility of parole, following his 1994 conviction for murder in the first degree.  See

27   Abstract of Judgment, ECF No. 19 at 10.  Petitioner advises the court that his minimum eligible

28   parole date is January 2, 2021.  See "Legal Status Summary" dated Nov. 8, 2010, ECF No. 20 at

                                           1

1  13.

2  Petitioner was validated as a member of the Aryan Brotherhood in 2009.  He seeks

3  to expunge this validation, to have all validation materials removed from his central file, and to

4  have the California Department of Corrections and Rehabilitation ("CDCR") comply with its own

5  regulations on validations going forward.

6  On September 24, 2009, W. Harrison, an assistant institutional gang investigator at

7  High Desert State Prison, served petitioner with a gang validation package, which included

8  evidence that petitioner was a member of the Aryan Brotherhood.  See Petition, ECF No. 1 at 13-

9  14, 54.  The evidence included four confidential informant reports.  Id.  One of the confidential

10  reports was authored by Special Agent R.S. Marquez.  See Petition, ECF No. 1 at 15, 56.

11  Harrison interviewed petitioner on September 25, 2009.  See Petition, ECF No. 1

12  at 14, 68.  Petitioner provided a written response to his validation package.  Id. at 14, 63.  During

13  the interview, petitioner asked for more information about the materials referenced in the

14  confidential reports, pursuant to California regulations and its penal code.  Id. at 14.  Harrison

15  provided some responses, but apparently did not answer all of petitioner's questions.  Id. at 14-15.

16  On September 27, 2009, Harrison and R. St. Andre, the Institutional Gang

17  Investigator, signed a "Gang Validation Chrono" stating that "[t]he IGI has determined that there

18  is sufficient evidence to validate [petitioner] . . ." and forwarding his information to the Office of

19  Correctional Safety.  See Petition, ECF No. 1 at 68.  On October 8, 2009, the Office of

20  Correctional Safety completed its review of petitioner's validation package and validated

21  petitioner, giving him an active/inactive review date of September 14, 2015.  See Petition, ECF

22  No. 1 at 12, 70; but see Petition, ECF No. 1 at 78 (text of director's level appeal reads that

23  petitioner will be eligible for review of status on September 22, 2014).  One of the signatories to

24  the validation was Officer R.S. Marquez.  Id. at 15, 70.  Petitioner received notification of the

25  validation on October 29, 2009.  Id.

26  At the time he was validated, petitioner was serving a 3 year term in the SHU for

27  attempted murder, with an eligible release date of March 17, 2011.  See Petition, ECF No. 1 at 13,

28  52.

2

1    A review of the petition reflects that, while petitioner was serving his 3 year SHU

2 term, that term was extended as a result of a rules violation report dated August 27, 2010 for

3 possession of a dangerous weapon.  See Petition, ECF No. 1 at 145.  Petitioner's April 1, 2011

4 SHU Committee Review details that petitioner has "extensive non-cell violence," and outlines his

5 disciplinary history to date: "Possession of weapon (4X).  Participation in mass disturbance (3X).

6 Attempted murder.  Possession of alcohol (2X).  Participation in a riot.  Destruction of state

7 property.  Battery on I/M w/weapon (2X).  Possession of dangerous contraband.  Battery on I/M

8 (3X).  Delaying a P.O. and Conspiracy to commit murder."  Id.

9    On November 3, 2009, petitioner filed an inmate appeal of the validation, alleging

10 among other things that the evidence used to validate him was insufficient, that he was not a gang

11 member, and that use of confidential materials prevented him from preparing a defense or

12 confronting adverse witnesses.  See Petition, ECF No. 1 at 16.  Petitioner's appeal was reviewed

13 by Lt. St. Andre; however, the letter decision dated December 2, 2009 explaining the reasons for

14 denial of the second level appeal was signed by the Chief Deputy Warden, R.L. Gower.  See

15 Petition, ECF No. 1 at 73, 77, 79.  Petitioner received notice of the denial on December 9, 2009.

16 See Petition, ECF No. 1 at 17, 77-79.

17    On December 15, 2009, petitioner filed a director's level appeal of the validation,

18 which was denied on April 8, 2010.  See Petition, ECF No. 1 at 17, 81.  The signatories to the

19 director's level appeal denial were D. Artis, Appeals Examiner, Inmate Appeals Branch, and D.

20 Foston, Chief, Inmate Appeals Branch.  Id. at 82.

21    Petitioner filed a petition for writ of habeas corpus in the Superior Court on

22 January 10, 2011, which was denied on February 4, 2011.  See Petition, ECF No. 1 at 94, 96.  The

23 Superior Court found, among other things, that the record reflected "no defect of procedural or

24 substantive due process; the petition does not establish that there was no evidence to support the

25 decisions reached in the validation process."  Id. at 97 (citing Wolff v. McDonnell, 418 U.S. 539,

26 556 (1974); Morrissey v. Brewer, 408 U.S. 471, 488 (1972); and Superintendent v. Hill, 472 U.S.

27 445, 455-56 (1985)).

28
3

1      Petitioner filed a habeas petition in the state Court of Appeal on February 26,

2   2011, which was denied on March 24, 2011 in a summary order.  See Petition, ECF No. 1 at 110,

3   113.  The petitioner later asked for a statement of reasons for the denial, to which the Clerks'

4   Office responded by saying that the court generally does not provide such information.  See

5   Petition, ECF No. 1 at 115.

6      Petitioner then filed a habeas petition in the state Supreme Court on May 29, 2011.

7   See Petition, ECF No. 1 at 20.  The Supreme Court directed the parties to file informal responses

8   on two issues: (1) petitioner's claim that his due process rights were violated when (a) Special

9   Agent Marquez reviewed and approved petitioner's gang validation package as a member of the

10  Committee from the Office of Correctional Safety, even though Marquez had authored a

11  confidential memorandum that served as one of the source items, and (b) Institutional Gang

12  Investigator St. Andre participated in the Second Level review on administrative appeal, even

13  though he participated in the initial validation process and forwarded the validation package to

14  the OCS; and (2) whether each of the three independent source items used for validation must

15  contain information about "current" gang activity, pursuant to California regulations.  See

16  Petition, ECF No. 1 at 128.  The Supreme Court also asked the state to file under seal copies of

17  the confidential memoranda used to validate petitioner.  Id.

18      Both the state and the petitioner filed responses to the court's inquiry.  See

19  Petition, ECF No. 1 at 130, 164.  The state argued, for various reasons, that there was no violation

20  of due process or state regulation.  See Petition, ECF No. 1 at 133-37.  On May 16, 2012, the

21  Supreme Court denied the petition in a summary order.  See Petition, ECF No. 1 at 207.

22      The federal petition was filed on June 1, 2012.

23      The Federal Petition

24      Petitioner filed his action as a petition for writ of habeas corpus under 28 U.S.C. §

25  2254.  Petitioner alleges that his validation as a member of the Aryan Brotherhood gang violated

26  due process because: (1) the evidence used to validate him was insufficient under state

27  regulations and under the settlement agreement in Castillo v. Alameida, et al., N.D. Cal. No. C94-

28  2847; (2) Special Agent Marquez, who authored one of the confidential reports, also approved

4

1  petitioner's gang validation, in violation of California regulations; (3) Institutional Gang

2  Investigator St. Andre, who participated in the initial validation process and forwarded the

3  validation package to the OCS, also participated in the Second Level review on administrative

4  appeal, in violation of California regulations; and (4) petitioner is now serving an indefinite SHU

5  term which represents an atypical and significant hardship in violation of Sandin v. Connor, 515

6  U.S. 472 (1995).

7          Petitioner also alleges that his SHU sentence "directly and inevitably" affects the

8  duration of his sentence, because he can no longer earn good time credits, and because the Board

9  of Prison Terms[1] refuses to parole gang members or associates.  See Petition, ECF No. 1 at 27.

10          Petitioner further alleges that the process violated his Sixth Amendment rights

11 because he was not allowed to know the identity of the confidential informants whose testimony

12 was the subject of the reports which were included in petitioner's validation package, and was

13 accordingly prevented from confronting the witnesses and preparing a defense.  Petitioner seeks

14 to have the validation revoked, and to have the validation materials removed from his central file.

15          The Motion to Dismiss

16          Respondent argues that the court lacks jurisdiction over the petition because

17 petitioner's success in this action will not necessarily accelerate his release from prison.  Instead,

18 respondent argues, success would only expunge the validation, a result which would not require

19 prison officials to release petitioner or alter the length of his sentence.

20          Respondent additionally argues that any credit-earning opportunities that may

21 result from petitioner's release from SHU would not compel his release, or necessarily reduce his

22 incarceration, and so do not establish a basis for habeas jurisdiction.  Instead, petitioner's release

23 from SHU would provide, at most, an opportunity for petitioner to earn work credits: he would

24 not necessarily be entitled to earn credits, or to ensure that any earned credit is not forfeited later.

25 Also, the credits could only be used to adjust petitioner's minimum eligible release date (MEPD),

26 regardless of which petitioner's life term would not lapse until the parole board finds him suitable

27

28 [1] The Board of Prison Terms was abolished in 2005, and replaced by the Board of Parole
   Hearings ("BPH").  Cal. Penal Code § 5075(a).

5

1   and the Governor concurs.

2       Petitioner opposes the motion, arguing that his validation and attendant housing in

3   SHU interferes with his ability to earn credits, and has accordingly moved his MEPD back,

4   effectively lengthening his sentence.  He also argues that the parole board routinely denies parole

5   to those prisoners with gang validations.

6       **ANALYSIS**

7       ***The Court Lacks Jurisdiction to Decide the Petition***

8       28 U.S.C. § 2254 authorizes federal courts to entertain petitions for writs of habeas

9   corpus from a state prisoner "only on the ground that he is in custody in violation of the

10  Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  In other words, the

11  challenge raised by the petition must have some nexus to the petitioner's custody.  See Bailey v.

12  Hill, 599 F.3d 976, 980-81 (9th Cir. 2010) (district court lacked habeas jurisdiction over petition

13  challenging restitution order where remedy petitioner sought – elimination or alteration of money

14  judgment – did not directly impact, and was not directed at the source of the restraint on,

15  petitioner's liberty).

16      The Supreme Court has recognized a "core" set of proceedings which are the

17  exclusive province of habeas corpus.  See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973)

18  (challenges to validity of confinement, or to particulars affecting its duration, are the province of

19  habeas corpus).  Civil rights proceedings under 42 U.S.C. § 1983, on the other hand, are the

20  appropriate vehicle for challenging conditions of confinement.  Whether a challenge to a prison

21  administrative decision comes within the scope of habeas jurisdiction or that of § 1983 turns on

22  whether a favorable judgment would directly affect the fact or duration of custody.  See Heck v.

23  Humphrey, 512 U.S. 477, 487 (1994) (district court must determine if judgment in favor of

24  plaintiff in § 1983 damages action would "necessarily imply the invalidity of [plaintiff's]

25  conviction or sentence," in which case plaintiff must seek relief in habeas); Bostic v. Carlson, 884

26  F.2d 1267, 1269 (9th Cir. 1989) (habeas jurisdiction lies where the petitioner, a federal prisoner,

27  sought "expungement of a disciplinary finding that is likely to accelerate the prisoner's eligibility

28  for parole.").

1    The *sine qua non* of habeas jurisdiction is the likelihood that a favorable result will

2    lead to accelerated release from custody.  Where the governing sentencing and parole regime is so

3    structured that expungement of the disputed finding would likely result in earlier release, as in

4    Bostic, supra, the claims may proceed in habeas.  On the other hand, where the governing

5    sentencing and parole regime is so structured that early release prospects are not necessarily

6    affected, § 1983 is the appropriate avenue for relief.  In Neal v. Shimoda, 131 F.3d 818 (9th Cir.

7    1997), two Hawaii state prisoners challenged the state's requirement that they participate in a

8    "Sex Offender Treatment Program" ("SOTP") as a precondition to parole eligibility.  The Court

9    of Appeals determined that the prisoner's challenge to the SOTP was properly brought under §

10   1983 rather than § 2254:

11   
12   

> If [prisoners] are successful in their challenge of the SOTP and their
> labeling as sex offenders, that decision will not undermine the
> validity of their convictions or continuing confinement at all.  The
> only benefit that a victory in this case would provide [prisoners],
> besides the possibility of monetary damages, is a ticket to get in the
> door of the parole board, thus only making them eligible for parole
> consideration according to the terms of their sentences.   If
> [prisoners] win, it will in no way guarantee parole or necessarily
> shorten their prison sentences by a single day.  The parole board
> will still have the authority to deny the inmates' request for parole
> on the basis of any of the grounds presently available to it in
> evaluating such a request.

13   
14   
15   
16   
17   

18   Id. at 824.

19   Direct challenges to parole decisions and parole consideration processes are

20   theoretically cognizable in habeas because they go directly to the fact or duration of custody.  See

21   Docken v. Chase, 393 F.3d 1024, 1031 (9th Cir. 2004) (district court had jurisdiction over habeas

22   petition challenging Montana parole board's refusal to provide annual review of suitability for

23   parole).[2]  However, challenges to disciplinary decisions or administrative classifications with only

24   a speculative effect on future parole prospect fall outside the scope of habeas jurisdiction.  See

25   
26   
27   
28   

---

[2]  The existence of federal habeas jurisdiction provides no real prospect of relief to California life prisoners seeking to challenge adverse parole decisions after Swarthout v. Cooke, 131 S.Ct. 859 (2011) (reversing Ninth Circuit's grant of habeas relief in California parole case, and holding that prisoner's only due process right in parole is procedural).  Swarthout effectively overruled an extensive and petitioner-friendly body of circuit authority on California parole denials.

1   Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2003) (claim regarding procedures used at

2   disciplinary hearing properly brought in § 1983 because expungement of disciplinary finding not

3   shown likely to accelerate prisoner's eligibility for parole), cert. denied, 541 U.S. 1063 (2004).

4          California's statutory and regulatory scheme creates an expectation that

5   indeterminate life prisoners "will be granted parole unless the Board finds, in the exercise of its

6   discretion, that they are unsuitable for parole in light of the circumstances specified by statute and

7   by regulation." In re Rosenkrantz, 29 Cal. 4th 616, 654 (2002). The exception very nearly

8   swallows the nominal rule. Under California law parole may be (and regularly is) denied on the

9   basis that the record contains "some evidence" of dangerousness, including evidence related to

10  institutional adjustment or evidence related the commitment offense that bears on dangerousness

11  at the time of the parole decision. In re Lawrence, 44 Cal. 4th 1181, 1191 (2008); In re Shaputis,

12  44 Cal, 4th 1241, 1254-55 (2008). The "some evidence" standard is an extremely low bar. In

13  Shaputis, for example, the state supreme court overturned the grant of state habeas relief to an

14  inmate who had been discipline-free throughout his incarceration and who had demonstrated

15  substantial rehabilitation. See also Swarthout v. Cooke, 131 S.Ct. 859 (2011) (reversing Ninth

16  Circuit's grant of habeas relief in California parole case). Accordingly, while petitioner will

17  eventually be eligible for parole *review,* he will not necessarily be eligible for parole. See Cal.

18  Penal Code § 3041(b) (panel shall not set release date if public safety requires continued

19  incarceration). His future parole prospects, and thus the effect of his gang validation on those

20  prospects, are entirely speculative.

21          Moreover, petitioner's prison record already contains substantially more than

22  "some evidence" to support a finding of unsuitability. Petitioner's SHU term for attempted

23  murder, disciplinary charge for weapons posession, and documented history of "extensive non-

24  cell violence" provide an ample basis for a finding of unsuitability without reference to Aryan

25  Brotherhood affiliation. See 15 Cal. Code Regs. § 2286(c)(1) (factors indicating unsuitability for

26  parole include history of violence). While the undersigned makes no predictions and expresses

27  no opinion regarding petitioner's eventual parole suitability, the existing record defeats any

28  argument that petitioner would be a likely candidate for parole absent the gang validation.

8

1      Finally, petitioner's reliance on forfeited good time credits to establish a nexus to

2    the duration of his custody fails.  A complex body of rules governs the credits that California

3    lifers can earn, and it is unclear from the record before the court which rules would apply to

4    petitioner.  It does appear that petitioner's 1994 first degree murder conviction predates the

5    change in law that made first degree murderers categorically ineligible for credits that advance

6    the minimum eligible parole date ("MEPD").  See Cal. Penal Code §§ 190(e), 2933.2 (as effective

7    June 3, 1998).  Even assuming, however, that his gang validation precludes petitioner from

8    earning credits which could affect calculation of his MEPD, only the schedule for parole

9    consideration would be affected.  See Cal. Penal Code § 3041(a).  Because petitioner's actual

10    suitability for release remains speculative at best, the alleged effect of gang validation on his

11    MEPD can have only a speculative effect on the ultimate duration of his custody.

12      Petitioner has presented non-frivolous challenges to his gang validation.[3]

13    However, this court can only consider those claims if it has jurisdiction.  Habeas jurisdiction does

14    not lie unless relief on the merits would have a likely effect on the duration of custody.  Bostic,

15    884 F.2d at 1269.  It is "the *likelihood* of the effect on the overall length of the prisoner's

16    sentence" that determines the availability of habeas jurisdiction.  Docken, 393 F.3d at 1028

17    (quoting Ramirez, 334 F.3d at 858) (emphasis added by Docken court).  In this case,

18    expungement of petitioner's gang validation would have only a speculative future effect on his

19    eligibility for parole.  Expungement would "in no way guarantee parole or necessarily shorten

20    [petitioner's] sentence by a single day."  Neal, 131 F.3d at 824.  Even without consideration of

21    Aryan Brotherhood ties, validated or not, the Board of Parole Hearings "will still have the

22    authority to deny [petitioner's] request for parole on the basis of any of the grounds presently

23

24    [3]  Specifically, the undersigned is troubled by the alleged review of the gang validation by
officials who were involved in the investigation and validation process.  Even if this court had
25    jurisdiction, however, petitioner would be entitled to relief under § 2254 only if the California
Supreme Court's rejection of the claim was contrary to or an unreasonable application of U.S.
26    Supreme Court precedent.  The undersigned is aware of no precedent which would provide a
basis for relief here.  Petitioner has also presented claims that are not a basis for federal habeas
27    relief, including claims based on violations of state law and a challenge to conditions of
28    confinement in the SHU.

1   available to it in evaluating such a request."  Accordingly, this court lacks jurisdiction to

2   adjudicate the petition.

### MOTION FOR APPOINTMENT OF COUNSEL

4           Petitioner has moved for the appointment of counsel.  ECF No. 21.  In light of the

5   undersigned's recommendation that the court lacks jurisdiction to review petitioner's claims, the

6   undersigned recommends that the motion for appointment of counsel be denied.

### CERTIFICATE OF APPEALABILITY

8           Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court

9   must issue or deny a certificate of appealability when it enters a final order adverse to the

10   applicant.  A certificate of appealability may issue only "if the applicant has made a substantial

11   showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons set forth

12   in these findings and recommendations, a substantial showing of the denial of a constitutional

13   right has not been made in this case.

14           IT IS HEREBY RECOMMENDED that:

15           1.   Petitioner's motion for appointment of counsel (ECF No. 21) be denied;

16           2.   Respondent's motion to dismiss this petition (ECF No. 19) be granted, and the

17                petition be dismissed; and

18           3.   The district court decline to issue a certificate of appealability in this case.

19           These findings and recommendations are submitted to the United States District

20   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

21   eight days after being served with these findings and recommendations, any party may file written

22   objections with the court and serve a copy on all parties.  Such a document should be captioned

23   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

24   shall be served and filed within twenty-eight days after service of the objections.  The parties are

25   advised that failure to file objections within the specified time may waive the right to appeal the

26   ////

27   ////

28   ////

1    District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

2    DATED: June 3,2013

3                                                               ALLISON CLAIRE
                                                            UNITED STATES MAGISTRATE JUDGE
4

5

6    AC:rb/jage1524

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28